IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NABI NABIL, #A28 133 314,             *
          Petitioner
      v.                                    *    CIVIL ACTION NO. JFM-10-1786

ERIC HOLDER, JR., et al.,               *
          Respondents.
                                          ***

MEMORANDUM

This 28 U.S.C. § 2241 petition for habeas corpus relief, which raises a challenge to petitioner's continued post-removal-order detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), was received for filing on July 1, 2010.[1] Petitioner does not challenge his underlying order of removal. Respondents have filed a court-ordered response seeking dismissal of the petition and petitioner has filed his response.[2] ECF Nos. 4 & 8. Upon review of the papers, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, the petition shall be dismissed.

I.     Background

Petitioner, a native of Afghanistan, was conditionally admitted to the United States on or about March 3, 2004, as the spouse of a refugee. On January 18, 2008, he was convicted in the United States District Court for the District of Maryland of the offenses of conspiracy to obstruct proceedings of a United States agency, obstruction of proceedings before a United States agency;

---

[1] Pursuant to *Rumsfield v. Padilla*, 542 U.S. 426, 434-442 (2004) (where alien is solely challenging his detention, proper respondent is custodian), the proper party respondent is Warden Ira F. Shockley. The Clerk shall amend the docket to term the names of Eric Holder, Jr., Michael Chertoff, and Marion Dillis.

[2] Petitioner's motion for extension of time to file a response (Paper No. 7) shall be dismissed as moot.

immigration fraud, and false statements, in violation of 18 U.S.C. §§ 371, 1505, 1546, & 1001.[3] On April 4, 2008, after completing his federal sentences, petitioner was served with a notice to appear, raising a multitude of charges related to his immigration status, and was taken into immigration custody that same date. ECF No. 4, Ex. A.

Since that time, petitioner appeared before the Immigration Court with counsel for judicial review of the removal charges and his applications for withholding of removal and Convention Against Torture ("CAT"). On May 4, 2009, Immigration Judge Jill H. Dufresne denied all applications and ordered petitioner removed from the United States to Afghanistan. A timely appeal filed with the Board of Immigration Appeals ("BIA") was dismissed on October 22, 2009.

Respondents assert that since October 22, 2009, the Immigration and Customs Enforcement Removal Office ("ERO") has made regular efforts to secure a travel document from the Afghanistan Embassy. A travel document request was first sent to the Embassy on November 13, 2009. *Id.*, Exs. C & D, Beard and Potvin Decls. Further, a completed passport application was sent to the Embassy on November 17, 2009. On December 2 & 11, 2009, Immigration and Customs Enforcement ("ICE") telephoned the Embassy. Several additional attempts were unsuccessfully made to contact the Consular by electronic mail and telephone in December of 2009. *Id.*, Ex. C, Beard Decl.

On January 11, 2010, Deportation Officer ("D.O.") Beard received a letter from the Embassy, denying ICE's request for a travel document for petitioner unless ICE could produce his "Tazkera," or national identification card, proving him to be a citizen of Afghanistan. A formal letter from the Afghani Consular was received on January 13, 2010, denying the travel document

---

[3] *See United States v. Nabil*, Criminal No. MJG-06-0395 (D. Md.).

request for the failure to produce a sufficient original identity document to establish petitioner's identity. ECF No. 4, Exs. C & D, Beard and Potvin Decls.

On January 22, 2010, D.O. Beard spoke to petitioner regarding his national identification card and petitioner indicated that his wife was looking for it. After unsuccessful attempts to contact the Embassy in February and March of 2010, D.O. Beard had a follow up visit with petitioner on April 13, 2010, and was informed that petitioner's wife could not find the identification card. On April 30, 2010, ICE Headquarters reviewed petitioner's case with Afghani Embassy officials and was again informed that travel documents could not be issued unless the original national identification card was produced. With assistance from the U.S. State Department, ICE personnel were able to obtain information from the U.S. Embassy in Afghanistan concerning the issuance of an original Tazkera but were told that the process could take anywhere from two to four months.[4] *Id.*, Ex. D.

On May 13, 2010, ICE issued a decision to continue petitioner's detention based upon the belief that ICE was working diligently with the Afghani government in order to procure a travel document for petitioner. *Id.*, Ex. E. In June, 2010, petitioner completed a passport application and the request, along with a fee and letter, was mailed to the Afghan Embassy. One month later, however, the Embassy informed petitioner that it could not issue the passport without a national identification document. The D.O. then contacted the Afghan Consulate in New York, rather than

---

[4] In his response, petitioner claims that time and time again requests for travel documents have been denied and "unless a new plan is devised to acquire said needed documents, he feels that his mandated incarceration has run its course and he is entitled [to] his due release and freedom." ECF No. 8. He additionally claims that the process of obtaining an original Tazkera will take two to three years, not two to four months.

Washington, D.C. and was informed that ICE should be able to obtain a travel document but would have to go back to the Embassy in Washington, D.C. to do so.

According to the record, ICE unsuccessfully attempted to contact the Consular at the Embassy in Washington, D.C. throughout July 2010. On July 28, 2010, a copy of petitioner's Tazkera was found and on August 18, 2010, ICE Headquarters and State Department officials met with the Afghani Consul and filed another completed travel document request and new passport application with the Afghan Embassy that included a copy of the Tazkera. The U.S. government has followed up with another travel document request sent through diplomatic channels. ECF No. 4, Ex. D, Potvin Decl. In addition, respondent affirms that once Afghan citizenship is verified and approval for removal has been received from Afghanistan, the Embassy is efficient in issuing a travel document within a timely manner and removal can occur. According to D.O. Potvin, ICE regularly and routinely removes Afghani nationals from the United States and has removed ten individuals to Afghanistan from the United States thus far in this fiscal year.

II. Standard of Review

The only issue pending before this district court concerns the reasonableness of petitioner's continued post-removal order detention. After a removal order becomes final,[5] the United States Immigration and Customs Enforcement ("ICE") must detain the alien until he is removed for up to ninety days (the "removal period"). *See* 8 U.S.C. § 1231(a)(2). Although § 1231(a)(6) appears to authorize discretionary indefinite detention of a removable alien beyond such period, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that post-removal-order detention under 8

---

[5] In post-removal-order detention, the removal period starts on the latest of the following: (1) the date when the order of removal becomes administratively final, that is, when the appeal is denied by the BIA or the time to file such an appeal elapses; (2) the date when a court order staying the removal becomes

U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about the alien's removal from the United States and does not permit indefinite detention. In sum, the Court found that after an order of deportation became final, an alien may be held for a six-month period. After this period:

> [o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 700. The purpose of detaining a deportable alien is to insure his presence at the moment of removal. *See id*. at 697-99. In cases where it is unlikely that removal will occur, detention of the alien no longer serves this purpose. *See Clark v. Martinez*, 543 U.S. 371, 384 (2005) (where repatriation negotiations for removal of inadmissible aliens to Cuba had ceased, removal was not reasonably foreseeable). *Zadvydas* holds that post-removal-order detention under 8 U.S.C. §1231(a)(6) does not authorize the Attorney General to detain an alien indefinitely beyond the removal period, but limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. After six months of post-removal-order detention, if an alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 700-01. If the Government

---

final; or (3) the date when the petitioner is released from the underlying criminal confinement, if such

response fails, the petitioner may be entitled to release from detention. *Id*. The more prolonged the alien's detention, the lower his or her burden, because "what counts as the 'reasonably foreseeable future' " shrinks as the alien's detention drags on. *Id*. at 701.

III.   Analysis.

   Petitioner's order of removal became final on October 22, 2009, when the BIA denied his appeal. *See* 8 U.S.C. § 1231(a)(1)(B). He has therefore been in post-removal order detention for over one year and the six-month presumptively reasonable period during which he may be detained under *Zadvydas* expired on or about April 22, 2010. The record shows that ICE Headquarters, ICE ERO, and the State Department have made diligent efforts to obtain a travel document from the Afghan Embassy in Washington, D.C. Perhaps not surprisingly, deportation officers and immigration officials have had difficulty in communicating with that Embassy and delays have ensued in obtaining petitioner's travel documents due in part to the unresponsiveness of Embassy personnel. In August of 2010, however, a travel document and passport request, along with a copy of petitioner's Tazkera, was submitted to the Embassy. In the instant case, petitioner has offered no evidence, other than the delay in obtaining travel documents from a foreign government, that his removal is not likely to occur in the foreseeable future. Respondent's assurance that ICE has been able to remove Afghani nationals to Afghanistan, travel documents to Afghanistan are obtainable, but are issued on a case by case basis, and it sometimes takes awhile to obtain the travel documents will at the present time suffice as evidence that removal is likely to occur.

---

confinement took place. *See* 8 U.S.C. § 1231(a)(1)(B).

In light of the length of petitioner's detention and the absence of travel documents, however, the petition will be dismissed without prejudice and administratively closed.[6] Respondent shall be required to file a status report setting out the developments and progress made, if any, in obtaining travel documents for petitioner's repatriation to Afghanistan. If it becomes evident to the court that petitioner's removal is not forthcoming, respondent will be required to again show cause why petitioner's release should not be required. The court will entertain any motion to reopen submitted by petitioner. A separate Order follows.


Date: November 9, 2010              /s/
                                    J. Frederick Motz
                                    United States District Judge

---

[6] Although a travel document request and the copy of the Tazkera were sent to the Embassy in August of 2010, the undersigned observes that travel document requests have been pending for more than a year and Afghanistan has failed to indicate that it might issue a travel document in the reasonably foreseeable future. Deportation Officer Potvin points to no specific information which indicates that a travel document will issue for petitioner. The court may therefore require further information regarding the necessity for petitioner's continued detention.